## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TAMARA LEE                                          *
8244 Church Lane
Baltimore, Maryland 21244                           *

     *Plaintiff*,                                *

v.                                                  *          Civil Action No. 1:15-cv-3712

ALLSTATE CLINICAL                                   *
LABORATORIES, LLC
9-F Gwynns Mills Court                              *
Owings Mills, Maryland 21117
                                                    *

     *Serve Registered Agent*:
     William F. Hickey, III                     *
     139 W. Main Street
     Elkton, Maryland 21921                     *

HASSAN HYATT                                        *
9-F Gwynns Mills Court
Owings Mills, Maryland 21117                         *

NATISHA COLE                                        *
9-F Gwynns Mills Court
Owings Mills, Maryland 21117                         *

ALPHA CLINICAL LABORATORIES, LLC                    *
9-F Gwynns Mills Court
Owings Mills, Maryland 21117                         *

RAFAEL F. CHIKVASHVILI                              *
9-F Gwynns Mills Court
Owings Mills, Maryland 21117                         *

     *Defendants*.                              *

*     *     *     *     *     *     *     *     *     *     *     *     *     *     *     *     *

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Tamara Lee, by and through counsel, LUCHANSKY LAW, files this Original Complaint and Jury Demand against Defendants Allstate Clinical Laboratories, LLC, Hassan Hyatt, Natisha Cole, Alpha Clinical Laboratories, LLC, and Rafael F. Chikvashvili (collectively "Defendants").

### INTRODUCTION

1.     This lawsuit arises out of Defendants' willful and unlawful conduct in failing to properly compensate Plaintiff for all earned wages.

2.     As a result of Defendants' willful failure to properly compensate Plaintiff for all wages due and owing, Defendants are liable for violations of the Fair Labor Standards Act ("FLSA") and Maryland Wage and Hour Law ("MWHL").  *See* 29 U.S.C. § 201, *et seq.*; Md. Code Ann., Lab & Empl., § 3-401, *et seq.*

### JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the claims presented herein pursuant to the FLSA.

4.     The claims set forth pursuant to the MWHL are so related and intertwined with Plaintiff's claims under the FLSA that they form part of the same case and controversy.  Therefore, this Court has supplemental and ancillary jurisdiction over Plaintiff's State claim relating to Defendants' willful violations of the MWHL.

5.     Venue is appropriate in this judicial district because this is a judicial district wherein Defendants conduct business and a district wherein many of the unlawful employment practices described herein are believed to have occurred.

## PARTIES

**A.**      *Plaintiff.*

6.      Tamara Lee lives in the State of Maryland, is a resident of Baltimore County and is a former employee of Allstate and Alpha Clinical Laboratories, LLC.

**B.**      *Defendants*

7.      Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that Defendants' officers, directors, vice-principals, agents, servants, regional managers, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine and normal course and scope of employment of Defendants' officers, directors, vice-principals, agents, servants, regional managers or employees.

i.      Allstate Clinical Laboratories, LLC.

8.      Allstate Clinical Laboratories, LLC (hereinafter "Allstate") is a for-profit business entity with its principle office located in Baltimore County, Maryland.

9.      Allstate is subject to the personal jurisdiction of this Court.

10.      Allstate may be served at the address listed in the above caption or wherever an appropriate agent for Allstate may be found.

11.      Allstate was Plaintiff's employer as the term "employer" is defined by the FLSA.

12.      Allstate was Plaintiff's employer as the term "employer" is defined by the MWHL.

13.      Allstate engages in interstate commerce.

14.      Allstate conducts interstate commerce.

3

15.     Allstate employs more than two employees who are engaged in commerce and work on goods or materials that have moved in or were produced for interstate commerce as a single enterprise under the FLSA.  By way of illustration, and not limitation, Allstate engages in interstate commerce as follows: (1) employees of Allstate negotiate and purchase supplies from producers and suppliers who operate in interstate commerce; (2) employees of Allstate regularly use wire and electronic means to communicate in interstate communications; and (3) Allstate regularly initiates and processes credit card transactions for patients, clients, and vendors, all of which involve interstate communications.

16.     Allstate satisfies the enterprise coverage provisions of the FLSA.

17.     Allstate has annual revenue in excess of $500,000.

18.     Allstate is an employer which is subject to the terms of the FLSA.

19.     Allstate is an employer which is subject to the terms of the MWHL.

   ii. <u>Hassan Hyatt</u>

20.     Defendant Hassan Hyatt ("Hyatt") is a resident of the State of Maryland.

21.     Hyatt may be served at the address listed in the above caption or wherever an appropriate agent for Hyatt may be found.

22.     Hyatt is the founder of Allstate.

23.     Hyatt is the President of Allstate.

24.     Hyatt is the highest ranking employee of Allstate.

25.     Hyatt is an owner of Allstate and, on information and belief, Hyatt is the majority or sole owner of Allstate.

26.     Hyatt was employed by Allstate during the time of Plaintiff's employment.

27.     Hyatt was a supervisor to Plaintiff during Plaintiff's employment with Allstate.

28.     Hyatt was responsible for Plaintiff being compensated at her straight-time rate for hours worked in excess of 40 during a seven-day workweek.

29.     Hyatt was aware that Allstate compensated Plaintiff at her straight-time rate for hours worked in excess of 40 during a workweek.

30.     Hyatt approved of Allstate compensating Plaintiff at her straight-time rate for hours worked in excess of 40 during a workweek.

31.     Hyatt approved of Allstate not compensating Plaintiff at the proper rate for overtime hours worked.

32.     Hyatt was responsible for the payment of Plaintiff's wages during her employment with Allstate.

33.     Hyatt contributed to implementing and/or managing the unlawful "on-call" system described herein which resulted in Plaintiff not being properly compensated for all wages due and owing.

34.     On information and belief, Hyatt reviewed and approved the payroll records relating to Plaintiff.

35.     Hyatt possessed the authority to set terms and conditions of employment for employees of Allstate.

36.     Hyatt possessed the authority to control and direct the conditions of employment for employees of Allstate.

37.     On information and belief, Hyatt exercised control over conditions of employment by issuing directives to be carried out by subordinates.

38.     During some or all periods of Plaintiff's employment, Hyatt exercised managerial responsibilities over Plaintiff's employment with Allstate

39.     During some or all periods of Plaintiff's employment, Hyatt exercised substantial control over Plaintiff's employment with Allstate

40.     Hyatt knew of and authorized the illegal pay practices described herein.

41.     Hyatt was Plaintiff's employer as the term "employer" is defined by the FLSA.

42.     Hyatt was Plaintiff's employer as the term "employer" is defined by the MWHL.

        iii.    Natisha Cole.

43.     Defendant Natisha Cole ("Cole") is a resident of the State of Maryland.

44.     Cole may be served at the address listed in the above caption or wherever an appropriate agent for Defendant may be found.

45.     Cole was employed by Allstate during the time of Plaintiff's employment.

46.     Cole was a supervisor to Plaintiff.

47.     During some or all periods of Plaintiff's employment, Cole exercised managerial responsibilities over Plaintiff's employment with Allstate.

48.     During some or all periods of Plaintiff's employment, Cole exercised substantial control over Plaintiff's employment with Allstate.

49.     Cole had responsibility relating to scheduling hours worked by Plaintiff.

50.     Cole reviewed and approved the time records submitted by Plaintiff.

51.     Cole improperly revised time records submitted by Plaintiff for the purpose of eliminating time entries made by Plaintiff for hours worked and Cole, thereby, reduced the wages which Allstate paid to Plaintiff.

52.     Cole was aware that time records she received from Plaintiff and subsequently approved did not reflect Plaintiff being compensated at the proper hourly rate for all hours worked.

53.     On information and belief, Cole possessed the authority to set certain terms and conditions of employment for Allstate employees, including for Plaintiff.

54.     On information and belief, Cole possessed the authority to control and direct conditions of employment for Allstate employees, including for Plaintiff.

55.     Cole contributed to implementing and/or managing the unlawful "on-call" system described herein which resulted in Plaintiff not being properly compensated for all wages due and owing.

56.     Cole was Plaintiff's employer as the term "employer" is defined by the FLSA.

57.     Cole was Plaintiff's employer as the term "employer" is defined by the MWHL.

        iv.     Alpha Clinical Laboratories, LLC.

58.     Alpha Clinical Laboratories, LLC (hereinafter "Alpha") is a for-profit business entity with its principle office located in Baltimore County, Maryland.

59.     Alpha is subject to the personal jurisdiction of this Court.

60.     Alpha may be served at the address listed in the above caption or wherever an appropriate agent for Alpha may be found.

61.     Alpha was Plaintiff's employer as the term "employer" is defined by the FLSA.

62.     Alpha was Plaintiff's employer as the term "employer" is defined by the MWHL.

63.     Alpha engages in interstate commerce.

64.     Alpha conducts interstate commerce.

65.     Alpha employs more than two employees who are engaged in commerce and work on goods or materials that have moved in or were produced for interstate commerce as a single enterprise under the FLSA.  By way of illustration, and not limitation, Alpha engages in interstate commerce as follows: (1) employees of Alpha negotiate and purchase supplies from producers and suppliers who operate in interstate commerce; (2) employees of Alpha regularly use wire and electronic means to communicate in interstate communications; and (3) Alpha regularly initiates and processes credit card transactions for patients, clients, and vendors, all of which involve interstate communications.

66.     Alpha satisfies the enterprise coverage provisions of the FLSA.

67.     Alpha has annual revenue in excess of $500,000.

68.     Alpha is an employer which is subject to the terms of the FLSA.

69.     Alpha is an employer which is subject to the terms of the MWHL.

v.      Rafael F. Chikvashvili

70.     Defendant Rafael F. Chikvashvili ("Chikvashvili") is a resident of the State of Maryland.

71.     Chikvashvili may be served at the address listed in the above caption or wherever an appropriate agent for Chikvashvili may be found.

72.     Chikvashvili was the founder of Alpha.

73.     Chikvashvili was the President of Alpha.

74.     Chikvashvili was the highest ranking employee of Alpha.

75.     Chikvashvili was an owner of Alpha and, on information and belief, Chikvashvili was the majority or sole owner of Alpha.

76.     Chikvashvili was employed by Alpha during a portion of Plaintiff's employment.

77.     Chikvashvili was a supervisor to Plaintiff during some parts of Plaintiff's employment with Alpha.

78.     Chikvashvili was responsible for Plaintiff being compensated at her straight-time rate for hours worked in excess of 40 during a seven-day workweek.

79.     Chikvashvili was aware that Alpha compensated Plaintiff at her straight-time rate for hours worked in excess of 40 during a workweek.

80.     Chikvashvili approved of Alpha compensating Plaintiff at her straight-time rate for hours worked in excess of 40 during a workweek.

81.     Chikvashvili approved of Alpha not compensating Plaintiff at the proper rate for overtime hours worked.

82.     Chikvashvili was responsible for the payment of Plaintiff's wages during her employment with Alpha.

83.     Chikvashvili contributed to implementing and/or managing the unlawful "on call" system described herein which resulted in Plaintiff not being properly compensated for all wages due and owing.

84.     On information and belief, Chikvashvili reviewed and approved the payroll records relating to Plaintiff.

85.     Chikvashvili possessed the authority to set terms and conditions of employment for employees of Alpha.

86.     Chikvashvili possessed the authority to control and direct the conditions of employment for employees of Alpha.

87.     On information and belief, Chikvashvili exercised control over conditions of employment by issuing directives to be carried out by subordinates.

88.     During some or all periods of Plaintiff's employment, Chikvashvili exercised managerial responsibilities over Plaintiff's employment with Alpha

89.     During some or all periods of Plaintiff's employment, Chikvashvili exercised substantial control over Plaintiff's employment with Alpha

90.     Chikvashvili knew of and authorized the illegal pay practices described herein.

91.     Chikvashvili was Plaintiff's employer as the term "employer" is defined by the FLSA.

92.     Chikvashvili was Plaintiff's employer as the term "employer" is defined by the MWHL.

## FACTUAL ALLEGATIONS

A.     *Introduction.*

        i.     <u>Employment with Alpha.</u>

93.     Plaintiff employment with Alpha began in approximately January of 2014.

94.     Throughout Plaintiff's employment with Alpha, Plaintiff was a non-exempt employee pursuant to the FLSA.

95.     Throughout Plaintiff's employment with Alpha, Plaintiff was a non-exempt employee pursuant to the MWHL.

96.     During Plaintiff's employment with Alpha, Plaintiff was compensated on an hourly basis.

97.     Throughout Plaintiff's employment with Allstate, Plaintiff was being compensated at the rate of $14.50 per hour.

98.     During her employment, Alpha issued paychecks to Plaintiff on a bi-weekly basis, *i.e.*, once every two-weeks.

10

99.     Plaintiff was employed by Alpha as a Phlebotomist.

100.    Plaintiff satisfactorily performed the duties of her job while employed by Alpha.

101.    Plaintiff adequately performed the duties of her job to the benefit of Alpha.

        ii.     <u>Employment with Allstate.</u>

102.    On or around the summer of 2014, Alpha was acquired.

103.    On or around the summer of 2014, the company formerly known as Alpha began operating as Allstate.

104.    As Alpha transitioned to becoming Allstate, Tamara Lee transitioned to becoming an employee of Allstate.

105.    Throughout Plaintiff's employment with Allstate, Plaintiff was a non-exempt employee pursuant to the FLSA.

106.    Throughout Plaintiff's employment with Allstate, Plaintiff was a non-exempt employee pursuant to the MWHL.

107.    During Plaintiff's employment with Allstate, Plaintiff was compensated on an hourly basis.

108.    Throughout Plaintiff's employment with Allstate, Plaintiff was being compensated at the rate of $14.50 per hour.

109.    During her employment, Allstate issued paychecks to Plaintiff on a bi-weekly basis, *i.e.*, once every two-weeks.

110.    Plaintiff was employed by Allstate as a Phlebotomist.

111.    Plaintiff satisfactorily performed the duties of her job while employed by Allstate.

112.    Plaintiff adequately performed the duties of her job to the benefit of Alpha.

**B.**      *Defendants failed to properly compensate Plaintiff.*

113.      While Plaintiff's hours varied from week-to-week during Plaintiff's employment, Plaintiff routinely worked in excess of 40 hours in a seven-day workweek.

114.      Alpha did not compensate Plaintiff at the overtime of 1.5 times Plaintiff's regular rate for hours that Plaintiff worked in excess of 40 during a single workweek.

115.      Allstate did not compensate Plaintiff at the overtime of 1.5 times Plaintiff's regular rate for hours that Plaintiff worked in excess of 40 during a single workweek.

116.      Alpha compensated Plaintiff at her "straight time" rate for hours which Alpha calculated as Plaintiff having worked in excess of 40 in a seven-day workweek.

117.      Allstate compensated Plaintiff at her "straight time" rate for hours which Allstate calculated as Plaintiff having worked in excess of 40 in a seven-day workweek.

118.      Alpha, acting without good faith, knowingly withheld wages owed to Plaintiff.

119.      Allstate, acting without good faith, knowingly withheld wages owed to Plaintiff.

120.      Throughout Plaintiff's employment with Alpha, Plaintiff was entitled to receive overtime compensation at the rate of 1.5 times her regular hourly rate for hours worked in excess of 40 in a seven-day workweek.

121.      Throughout Plaintiff's employment with Allstate, Plaintiff was entitled to receive overtime compensation at the rate of 1.5 times her regular hourly rate for hours worked in excess of 40 in a seven-day workweek.

122.      There is no *bona fide* dispute that Plaintiff was entitled to receive overtime compensation for hours worked in excess of 40 in a seven-day workweek.

12

123.     Plaintiff seeks wages owed and other available relief against Defendants through Plaintiff's Complaint for unpaid wages.

**C.     *Defendants acted "willfully."***

124.     Defendants acted willfully, as that term is used in the context of the MWHL and FLSA in their failure to properly compensate Plaintiff.

125.     Defendants knew, or had reason to know, that Plaintiff was performing work which was for the benefit of Defendants while Plaintiff was not being compensated at the proper overtime premium rate.

126.     Despite the fact that Defendants knew, or had reason to know, that Plaintiff was performing work for Defendants' benefit during periods when Plaintiff was not being compensated properly, Defendants continued to allow Plaintiff to perform this work and failed to properly compensate Plaintiff for the work performed.

127.     Despite the fact that Defendants, on information and belief, were aware of the wage and hour laws requiring Defendants to compensate Plaintiff at the overtime premium rate, Defendants failed to comply with these laws.

128.     As described herein, Defendants regularly instructed Plaintiff to perform overtime work with the intention of not paying Plaintiff at the applicable overtime premium rate.

129.     As described herein, Defendants knowingly adhered to an a compensation practice for "on-call" hours which failed to properly compensate Plaintiff for all of the hours she worked.

130.     Defendants concocted the above described illegal pay practices for the purpose of compensating Plaintiff at a lower pay rate than Plaintiff was legally entitled to receive.

**D.**   *Failure to calculate proper overtime rate when working at two or more rates.*

131.   During Plaintiffs' employment and in a single workweek, Plaintiff performed two or more different types of work (as defined by Defendants) which were compensated by Defendants at different rates.

132.   By way of illustration, Plaintiff was compensated at an hourly rate for certain scheduled hours, and compensated at a flat rate for certain on-call hours.

133.   When Plaintiff worked over 40 hours in a workweek and also performed work at two different pay rates, Defendants failed to compensate Plaintiffs at the proper overtime hourly rate of the weighted average of Plaintiffs' non-overtime hourly rates.

**E.**   *"On-call" hours.*

134.   In addition to regularly scheduled work hours, Plaintiff also worked "on-call" hours.

135.   The "on-call" hours were often worked on Saturday or Sunday.

136.   The on-call conditions imposed by Defendants were so restrictive, or the calls received were so frequent, that Plaintiff could not effectively use the on-call time for personal purposes.

137.   Notwithstanding the restrictions, Defendants only compensated Plaintiff when she received a call, traveled to a requested location, and actually performed phlebotomy work.

138.   When Plaintiff was scheduled to be on-call, but did not receive a call, Defendants did not provide her any compensation.

139.   If Plaintiff was scheduled to be on-call, but did not receive a call, Defendants did not count Plaintiffs on-call hours in Defendants' calculation of the total hours Plaintiff worked in a workweek.

140.    The compensation that Defendants paid to Plaintiff for on-call work was paid on a fluctuating flat rate basis that was unrelated to hours worked.

141.    The on-call work performed by Plaintiff and for which she received compensation was not counted by Defendants towards their calculation of the total hours Plaintiff worked in a workweek.

142.    The on-call work performed by Plaintiff often involved extensive travel.  Defendants did not track Plaintiff's travel time, provide compensation at an hourly or flat rate for this time, or count the travel time towards the calculation of the total hours Plaintiff worked in a workweek.

**G.**    ***Altering Plaintiffs' timesheets.***

143.    Upon receiving timesheets reflecting hours worked by Plaintiff, Natisha Cole altered the timesheets.

144.    On information and belief, Cole altered Plaintiff's timesheets for the purpose of improperly reducing the number of hours to which Plaintiff was otherwise legally entitled to be compensated.

145.    On information and belief, following Cole's revisions to Plaintiff's timesheets, Cole willfully failed to maintain records of the original timesheets.

**COUNT I**
**Violation of the Fair Labor Standards Act – Overtime Wages**
**Failure to pay wages owed**

146.    Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

147.    This count arises from Defendant's violation of the Fair Labor Standard's Act, 29 U.S.C. section 207, for Defendant's failure to pay overtime wages to plaintiff for all time worked in excess of 40 hours per seven-day workweek.

15

148.    Plaintiff was regularly directed by Defendant to work, and did so work, in excess of 40 hours in one or more individual workweeks.

149.    Pursuant to 29 U.S.C. section 207, for all seven-day workweeks during which Plaintiff worked in excess of 40 hours, Plaintiff was entitled to be compensated at a rate of one-and-one-half (1.5) times Plaintiff's regular hourly rate of pay.

150.    Defendant did not compensate Plaintiff at a rate of one-and-one-half (1.5) times Plaintiff's regular rate of pay for all time worked in excess of 40 hours in a seven-day workweek.

151.    Defendant did not properly compensate Plaintiff for on-call hours worked.

152.    Defendant did not properly track the hours worked by Plaintiff.

153.    Defendant did not properly compensate Plaintiff at the required weighted-average when Plaintiff worked at more than one pay rate in a single workweek.

154.    Defendant's failure to pay overtime wages for time worked in excess of forty hours per week was a violation of the Fair Labor Standards Act, 29 U.S.C. section 201, *et seq*.

155.    Defendant's failure and refusal to pay all wages owed was a willful violation of Fair Labor Standards Act, 29 U.S.C. section 207, *et seq*.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

a.    Judgment against Defendant for violation of the wage provisions of the FLSA;

b.    Judgment that Defendant's violations as described above were willful;

c.    An award in an amount equal to Plaintiff's unpaid back wages;

d.    An award to Plaintiff of unpaid wages owed, liquidated damages and penalties where provided by law, and interest thereon, subject to proof at trial;

e.      An award of reasonable attorney's fees and costs pursuant to 29 U.S.C. 216 section and/or any other applicable laws;

f.      An award of prejudgment interest to the extent liquidated damages are not awarded;

g.      Award reasonable attorneys' fees and costs in the event of an appeal, as well as post-judgment interest consistent with applicable law; and

h.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## COUNT II
### Maryland Wage and Hour Law
### Md. Code Ann., Lab & Empl. § 3-401, *et seq.*
### Failure to pay wages owed

156.    Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

157.    Defendant's failure to pay Plaintiff her appropriate wages for all hours worked, as described herein, violated the MWHL.

158.    Plaintiff was entitled to be compensated at 1.5 times her regular hourly rate for each hour worked over 40 in a seven-day workweek.

159.    Defendant did not compensate Plaintiff at 1.5 times her regular hourly rate for each hour worked over 40 in a seven-day workweek.

160.    Defendants' failure to compensate Plaintiff at 1.5 times her regular hourly rate for each hour in worked in excess of 40 hours per workweek violated the MWHL.

161.    Defendant did not properly compensate Plaintiff for on-call hours worked.

162.    Defendant did not properly track the hours worked by Plaintiff.

163.    Defendant did not properly compensate Plaintiff at the required weighted-average when Plaintiff worked at more than one pay rate in a single workweek.

164.    As the direct and proximate result of Defendant's violations of the MWHL, Plaintiff suffered significant damages and lost wages.

165.    Pursuant to the MWHL, Defendant is liable to Plaintiff for, *inter alia*, the difference between the wages paid to Plaintiff and the wages required by statute, plus reasonable attorneys' fees, pre- and post- judgment interest, fees and costs.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

a.    Judgment against Defendant for violation of the overtime provisions of the MWHL;

b.    Judgment that Defendant's violations as described above were willful;

c.    An award in an amount equal to all unpaid back wages for Plaintiff and those similarly situated;

d.    An award to Plaintiff for the amount of unpaid wages owed, up to treble damages and penalties where provided by law, and interest thereon, subject to proof at trial;

e.    An award of reasonable attorney's fees and costs pursuant to the MWHL and all other applicable laws;

f.    An award of prejudgment interest to the extent liquidated or treble damages are not awarded;

g.    Award reasonable attorneys' fees and costs in the event of an appeal, as well as post-judgment interest consistent with applicable law; and

   h.  For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

  166. Plaintiffs demand a trial by jury on all issues triable to a jury.


Dated: December 3, 2015        Respectfully submitted,

              _____ /s/ *Judd G. Millman*_____
              Judd G. Millman (Fed Bar No. 18212)
               judd@luchanskylaw.com
              Bruce M. Luchansky (Fed. Bar No. 08439)
               lucky@luchanskylaw.com
              **LUCHANSKY Law**
              606 Bosley Avenue
              Suite 3B
              Towson, Maryland 21204
              Telephone: (410) 522-1020
              Facsimile: (410) 522-1021
              *Attorneys for Plaintiff*